Argued December 5, 1957, modified December 3, 1958

# GEORGE H. BUCKLER CO. *v.* THE AMERICAN METALLIC CHEMICAL CORP.

332 P. 2d 614

640

*Clifford B. Alterman,* Portland, argued the cause for appellant. With him on the brief were Raymond M. Kell and Floyd D. Hamilton, Portland.

*John R. Latourette* argued the cause for respondent. On the brief were Latourette & Latourette, Portland.

LUSK, J.

This is a suit to foreclose a lien on chattels. The circuit court entered a decree granting judgment in favor of the plaintiff for the amount claimed, to-wit, $50,362.23, with interest, attorney's fees, and costs, and ordering the property upon which the lien is asserted sold for the satisfaction of such judgment.

The controversy had its inception in a contract in writing entered into under date of November 20, 1951, by the plaintiff, George H. Buckler Co., an Oregon corporation, hereinafter called "Buckler", and the defendant, The American Metallic Chemical Corp., a Delaware corporation, hereinafter called "American", under which Buckler agreed to provide labor and materials for the proper construction and completion of a chemical plant in Portland, Oregon, for American. The work to be done by Buckler is thus specified in the contract:

"1. Rehabilitation of the former boiler erection building approximately 77' x 166' located 356' west of the Container Corporation Building at the Former Oregon Shipbuilding Corporation tract.

"2. Rehabilitation of former fire brick storage buildings, approximately 150' x 150', located adjacent to former Boiler Erection Buildings.

"3. Any and all new construction work not covered by Item 1 and Item 2, mechanical construction, electrical construction, in order to make a complete processing plant."

The work thus described included the installation of motors, generators, plumbing, heating, piping, electrical work, bus bars, bus switches for power, bucket conveyors and hoppers, an agitator and what are designated as a Skinner Roaster, a Baker Cooler, and a Williams Mill. In consideration of the performance of the contract, American agreed to pay Buckler cost plus ten per cent profit, plus two per cent overhead, payments to be made before the 10th of each month following date of billing.

The land and buildings referred to in the contract were held by American under a five-year lease, with an option to renew for an additional period of five

years. The lease contemplated that the lessee was to adapt the premises for use as a chemical plant and install the equipment for such purpose, and contained a provision "that all facilities including electrical fixtures and equipment and pipes which are installed by Lessee and which are part of the equipment used in manufacturing, packaging and distribution of chemicals, metals and metal products and which are moveable without destroying the basic structure of the premises leased, and all moveable stores and office fixtures shall be and remain the property of the Lessee."

Buckler commenced the work October 15, 1951. Its last billing was for payroll for the period commencing July 7, 1953, and ending September 27, 1953. The total amount billed was $221,548.60. The total amount paid by American was $171,185.37, leaving a balance of $50,363.23.

On September 29, 1953, Buckler filed a notice of lien on chattels with the County Clerk of Multnomah County, describing the property upon which the lien was claimed as follows:

> "1—Skinner Roaster,
> 1—Baker Cooler,
> 1—Williams Mill,
> 1—Paddle Agitator in Leeching Tank,
> 1—Westinghouse Motor Generator Set and appurtenances,
> ALL Bucket conveyors and hoppers,
> ALL process piping,
> Bus bar and all electrical installation and equipment not part of the realty."

The notice averred that the lien was claimed "for and on account of labor, skill and materials expended upon the said property between the 15th day of October, 1951, and the 25th day of September, 1953"; that the

expenditure of labor, skill and materials was completed on September 25, 1953; that the claimant demanded therefor $159,118.60; that no part thereof had been paid except $108,756.37, and that there was a balance due of $50,362.23, for which amount a lien upon the property described was claimed.

The evidence establishes that the plaintiff performed its contract and, in particular, (disregarding criticisms by American of insufficiency in the description of certain of the items and asserted failure to prove the averment as to "all" bucket conveyors and the bus bar) that it expended labor and materials upon the chattels described in the notice of lien. All monthly statements submitted by Buckler during the progress of the work were promptly paid up to and including the statement for June, 1952. Subsequent payments were credited by Buckler to the indebtedness for work done through September and a part of October. As previously stated, and as shown by Buckler's own evidence, the balance owing upon the entire job at the completion of the contract was $50,363.23. This is the identical amount, save for one dollar[1], for which the lien is claimed upon the chattels described in the notice of lien.

The Skinner Roaster and Baker Cooler, which are included in the property so described, were completed and paid for prior to October 1, 1952. Notwithstanding this fact and the testimony of Mr. John K. Comstock, Secretary-Treasurer of Buckler, that the amount Buckler was suing for "represents work that was done *subsequent to September 30, 1952*" (italics added), the lien is asserted against these items. To avoid this difficulty, resort was had to the "single contract"

---

[1] The discrepancy arises from an error in the lien notice in crediting American with the payment of one dollar more than the proof shows was in fact paid.

theory, as hereinafter explained, and the accounts were re-cast in an attempt, for the first time, to segregate the costs for labor and materials expended on the realty from those on the personalty, and to make a corresponding re-allocation of payments. This was done shortly before the notice of lien was filed, months after completion of the contract[2], and was the joint work of Mr. Comstock and Mr. Gregg M. Patterson, General Manager of Buckler at the time. The result of their efforts was Plaintiff's Exhibit 20 for identification, which was offered in evidence but excluded on objection of the defendant. We reproduce the exhibit:

"GEORGE H. BUCKLER CO.
Contractors
4235 S. E. 17th Avenue
Portland 2, Oregon
American Metallic Chemicals Corporation
Rehabilitate Boiler Erection Building

Job No. 1006

| | |
|---|---|
| Labor and material for construction and installation of machinery and equipment: | 141,816.94 |
| 2% Overhead | 2,836.34 |
| | 144,653.28 |
| 10% Profit | 14,465.32 |
| | 159,118.60 |
| Less Amount Paid | 108,755.37 |
| Balance Due | $ 50,363.23" |

[2] Buckler's final bill was for payroll covering the period July 1 to September 27, 1953. As will be later explained, this expense was not incurred by Buckler in pursuance of the contract and was not a proper charge against American. The last bill, or "progress estimate" as it is called, for work done and material furnished under the contract was submitted under date of June 9, 1953. The items thereof are dated in March, April and June, 1953, the last being June 9.

■■ Aside from the exhibit itself, there is no substantial evidence to support the allocation shown upon it. The exhibit is not competent evidence. It is not "a record of an act, condition or event * * * made in the regular course of business at or near the time of the act, condition, or event", ORS 41.690, but a memorandum prepared long after the event for the purpose of enforcing a lien. The memorandum was not admissible under ORS 41.640 (e) as a summary of the accounts standing on the books of the company. As stated in 20 Am Jur 390, Evidence § 449:

"* * * The testimony of an accountant or auditor is frequently admitted in cases of this character, where he has examined the documents or books involved and is able to testify as to their contents. But it is clear that any summary rendered by such a witness must be confined to the facts or data that came within his observation and must exclude the witness' own conclusions or inferences."

This rule is exemplified in *State v. Nevada Central Railway Company*, 28 Nev 186, 81 P 99, 113 Am St Rep 834. The opinion is an excellent one and leaves little to be said upon the subject. In that case, evidence purporting to be a summary of the books of a railroad company, but which necessarily included the opinions or judgments of the witness as to what items were properly chargeable as expenses of operation of the railroad, was held to be inadmissible. Here the questions passed on by Mr. Patterson (who actually made the allocation, while Mr. Comstock checked the figures) and reflected in the figures were questions of law, that is to say, what property supplied and worked on by the plaintiff in this large industrial plant was realty and what was personalty. The evidence indicates that these would have been, as to some of the

items involved, questions of considerable difficulty, as such questions frequently are. Two illustrations, among many others which might be adduced, will suffice. The lien notice includes "bus bar and all electrical installation and equipment not part of the realty." This assumes that some undetermined portions of these items were parts of the realty. Again, the Westinghouse Generator Set mentioned in the lien notice was bolted down on a large concrete floor and enclosed with a substantial wall made of six-inch tile. Mr. Patterson could not have made the allocation which he undertook without determining in each of these instances whether the installations referred to were real property or personal property. Their determination was for the court, and not the witness. And no evidence was introduced on the basis of which the court could determine these questions and make the proper allocations. Exhibit 20 not being admissible, there was a complete failure of proof as to an essential element of the plaintiff's case, namely, the allegation that the plaintiff expended labor, skill, and materials on the particular items of property described in the notice of lien on account of which there was a balance owing to the plaintiff of $50,362.23. The amount of the indebtedness properly allocable to personal property is thus left wholly to conjecture and for this reason alone the lien is invalid. *Laughlin v. Connors,* 54 Or 184, 186, 102 P 793.

The "single-contract" rule invoked by Buckler is recognized in this state. *Hiner v. Pitts,* 89 Or 602, 175 P 133, was a suit to enforce a lien upon a donkey engine for the reasonable value of labor, skill and material expended upon it. The plaintiff, pursuant to an agreement with the owner of the donkey engine, which was being used in logging operations, made

repairs thereon at various times as they were needed. He filed a lien for the sum due him for all such work and materials. The defendant contended that these were separate transactions, for each of which a lien could and should have been filed, and that the lien for the earlier work had been lost because the notice was filed too late. The court held that "the items of the claims * * * were supplied in pursuance of a single contract resulting in a single demand", and that the time for filing the lien did not commence to run until the termination of the contract by mutual consent. It was further held that while the contract was in force "the plaintiffs had, in a sense, a modified possession of the machine", and that "When they mutually ended their contract the plaintiffs gave up this conventional possession of the chattel and surrendered it to Pitts [the owner], which is sufficient by a fair construction of the statute to fix the date from which to reckon the 60 days prescribed within which to file a notice of lien." 89 Or at pp. 607-608.

In *Coast Engine and Machine Works v. Barbee,* 130 Or 159, 165, 279 P 264, we sustained a claim of lien upon an entire tractor, notwithstanding the fact that only part of the tractor had been brought to him for mending or repair.

A leading case, cited by the plaintiff, is *Braufman v. Hart Publication, Inc.,* 234 Minn 343, 48 NW2d 546, 25 ALR2d 1030. The facts in that case were that Park Square Manufacturing Company, a co-partnership, delivered a carload of paper to the defendant pursuant to a contract under which the defendant was to print certain paper forms pursuant to directions to be received from Park Square Manufacturing Company. Part of the paper was used for the printing. The defendant's bill for this work was not paid. The de-

fendant retained possession of all the paper, including that on which it had done the printing. Plaintiff, an assignee which had succeeded to the interest of Park Square Manufacturing Company, brought an action to recover possession of the printed and unprinted paper. The defendant asserted a lien upon the entire quantity of paper under the provisions of a statute giving a possessory lien upon personal property for "making, altering or repairing any article, or expending any labor, skill or material thereon." The statute expressly provided that the lien should be given to any one contributing "to the enhancement" of the value of such property, and the plaintiff contended, therefore, that the lien should not extend to property the value of which had not been thus enhanced. The court held that the defendant could enforce its lien against all the paper. The rationale of the rule was thus stated:

"We take it to be the foundation of the single-contract rule that several articles delivered under a single contract for the processing of the whole are to be treated as a unit. The result of applying it is that charges for work done on any portion of goods covered by the same contract attaches to the remaining goods in the same respect as if the work had been performed on those goods." 234 Minn at p 349.

In the early English case of *Blake v. Nicholson,* 105 Eng Reprint [K.B.] 573, it was held that a printer who had printed for one Stratford some 8,751 copies of a work and had delivered 5,987 copies was entitled to a lien upon any part of the goods—in that case the printed copies retained—for the balance due on the entire work. It is stated in the report:

"* * * Stratford supplied the paper for printing the several numbers from time to time as they

were to be printed; and a separate charge was made by the defendant for the printing of each number, amounting in the whole to 494£.2s., of which Stratford had at different times paid 185£. on account. Afterwards Stratford becoming bankrupt, the plaintiffs, as his assignees, applied to the defendant for the delivery of the copies remaining in his hands, tendering to him so much as was due for the printing of those copies, in proportion to his charge for the whole. The defendant refused to deliver them, insisting that he had a lien for the whole balance. * * *"

In deciding the case for defendant, Lord Ellenborough said: "I think the defendant had a lien for the whole balance, the work being an entire word [sic] [work] in the course of prosecution, upon the same principle that a tailor, who is employed to make a suit of cloaths, has a lien for the whole price upon any part of them." 105 Eng Reprint [KB] at p 573. See, also, Annotation, 25 ALR2d 1037.

■ Whether the rule of these cases can ever be applied where the contract covers both real and personal property is a question that need not be determined. Certainly its application is attended with difficulties. Here the single contract is not simply a contract for the expenditure of labor and materials on chattels, but for the production of a complex industrial plant involving the renovation of buildings and the furnishing and installation of engines and equipment, some of which, by reason of the nature of their annexation, became part of the realty. The burden, therefore, devolved upon the claimant, under the theory it adopted, to split up the contract, as it were, into two contracts and allocate costs and payments previously treated indiscriminately so as to arrive if possible at the amount owing exclusively for work on personal

property with a fair degree of accuracy. As we have held, the plaintiff has not succeeded in making this character of proof. It is difficult, indeed, to avoid the inference that the figure, $50,363.23, in Exhibit 20 is an arbitrary one. We suppose that it is possible for the amount owing on the whole job to have been identical with the amount owing on the chattels, but the coincidence is so extraordinary as to make the claim unacceptable unless it is supported by convincing evidence. There is no such evidence in the record.

The statute in effect at the time the lien notice was filed was § 67-601, OCLA, now codified as ORS 87.085. It provided that every person who has "expended labor, skill or materials * * * upon any chattel" at the request of the owner "shall have a lien upon said chattel for the contract price for all such expenditure * * * for a period of one year from and after such expenditure, notwithstanding the fact that the possession of such chattel has been surrendered to the owner * * *."

As we said in *Johnson v. Brizendine,* 141 Or 477-480, 18 P2d 247:

> "It is only by virtue of this section, if at all, that plaintiff's lien may be upheld. By its terms, the lien thus given is restricted to expenditure of labor, etc., upon any chattel. In that respect, it is merely declaratory of the common law. Under the common law, the principle underlying the lien for such expenditure is that it results in imparting additional value to the chattel."

In view of this principle, we held in that case that where the complaint in a suit to foreclose a lien upon machinery disclosed that a single charge was made for work on a building as well as on the chattel—on a non-lienable as well as a lienable item—and the charge

was incapable of segregation without the aid of extrinsic evidence, no lien had ever been acquired, and the complaint was demurrable. See, also, *Stewart v. Spalding,* 71 Or 310, 326-327, 141 P 1127; *Gyllenberg v. Heriza,* 127 Or 481, 483, 272 P 674.

■ The balance owing on the entire contract includes charges for labor and material expended on real property as well as other non-lienable items. It is our opinion that it is this balance which Buckler in point of fact is seeking to recover, and as the claim so considered covers both lienable and non-lienable items in a lump sum, the lien for this reason also is invalid.

Other objections to the validity of the lien have been urged, some of which present questions of importance and difficulty, but, in view of what has already been said, it is not necessary to discuss them.

The question remains whether Buckler, notwithstanding its failure to establish its lien, is entitled to a money judgment as in an action at law. The record shows that shortly after the commencement of the trial, the court suggested that the parties might wish to agree as to the course to be pursued in the event that the lien should be held invalid, and counsel who represented American on the trial (but who is not of counsel in this court) stated:

> "It is my understanding of plaintiff's theory that he is seeking equitable relief; that if the lien is not valid, still he is seeking a money judgment.
> "It is quite acceptable to the defendant to have all of the facts, in either event, tried by the court."

■ In view of this stipulation, this court, having found the lien invalid, is authorized to enter a money judgment. *Ward v. Town Tavern,* 191 Or 1, 24-42, 228 P2d 216; cf. *Barber, Trustee, v. Henry,* 197 Or 172,

183, 252 P2d 802. The evidence discloses without contradiction that American is indebted to Buckler in the amount sued for, less the amount of payroll claimed in Buckler's final billing dated September 25, 1953, to-wit, $1,097.60, plus payroll taxes and insurance, 2% overhead, and 10% profit, a total of $1,354.66. This expense was incurred under the following circumstances. Mr. George H. Buckler, president of the plaintiff corporation, met with the board of directors and the counsel of American in New York in July, 1953, and told them of his intention to file a lien. He testified that he was asked by American's counsel "to hold up on the lien, and he said keep a man on the job, and we agreed to that and Mr. Landoak [chairman of the board of American] also agreed to that." In response to the question, "Keep a man on the job, what for?", Buckler testified, "For the labor, so we could file a lien". Accordingly, as Comstock testified, one of Buckler's workmen was sent to the plant "to retain constructive possession until such time as the lien would be filed." It is the wages of this workman that are covered by the final billing. It is entirely clear that this is a charge not covered or contemplated by the contract, and equally clear, we think, that there is no evidence that American agreed at the time the arrangement was made to pay the workman's wages.

It is suggested in the briefs of counsel for American that no money judgment can be entered, because there is no proof of the allegations of the complaint that the money owing to Buckler is due for labor, skill and materials expended upon the particular items of personal property described in the lien notice and in the complaint. This objection may have some technical validity. We think, however, that it was the spirit of the stipulation that, in case the lien should be held

invalid, the court might enter a judgment for the amount found due to Buckler under the contract.

The decree of the circuit court will be modified in accordance with these views. The lien is declared void. A judgment will be entered in favor of the plaintiff for the sum of $49,007.57, without attorney's fees. No costs or disbursements will be allowed.