Argued and submitted May 6, 2021; decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings February 10, 2022

ARROWOOD INDEMNITY COMPANY,
*Respondent on Review,*

*v.*

Douglas Dean FASCHING,
*Petitioner on Review.*

(CC 17CV37770) (CA A167409) (SC S067964)

503 P3d 1233

Plaintiff, an insurance company, brought a subrogation claim against defendant, asserting that defendant had defaulted on several student loans owned by plaintiff's insured, a third-party business, after which the business filed an insurance claim that plaintiff paid. In support of its claim, plaintiff submitted copies of documents that it had received from its insured. The trial court ruled that the documents were admissible under OEC 803(6), the Oregon "business records" exception to the hearsay rule, and granted plaintiff's motion for summary judgment. The Court of Appeals affirmed. *Held*: In order for a record to be eligible for Oregon's "business records" exception, OEC 803(6), the proponent of the record must present evidence regarding the record-making practices of the business that created the record sufficient to establish that the record has the characteristics set out in OEC 803(6) itself.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Jonathan M. Radmacher, McEwen Gisvold LLP, Portland, argued the cause and filed the briefs for petitioner on review.

Kelly F. Huedepohl, Gordon Rees Scully Mansukhani, LLP, Portland, argued the cause and filed the brief for respondent on review.

Nadia H. Dahab, Sugerman Law Office, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association. Also on the brief was Phil Goldsmith, Law Office of Phil Goldsmith, Portland.

_____

\* On appeal from Multnomah County Circuit Court, Bruce C. Hamlin, Judge pro tempore. 304 Or App 749, 469 P3d 271 (2020).

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

DUNCAN, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

Garrett, J., dissented and filed an opinion, in which Balmer, J., joined.

_____

** DeHoog, J., did not participate in the consideration or decision of this case.

**DUNCAN, J.**

This case concerns Oregon Evidence Code (OEC) 803(6), the "business records" exception to the hearsay rule.[1] In the trial court, the parties filed cross-motions for summary judgment, each of which focused on whether documents plaintiff had received from a third party were admissible. Plaintiff argued that the documents qualified for the business records exception. Defendant disagreed, arguing that, in order for the documents to qualify for the exception, plaintiff had to present evidence, through a qualified witness, about the record-making practices of the businesses that had created the documents, and that plaintiff had failed to do so. The trial court agreed with plaintiff, ruling that, "as long as the documents [were] received, incorporated, and relied upon" by plaintiff, they were "admissible as business records." Following that ruling, the trial court granted plaintiff's motion for summary judgment, denied defendant's motion for summary judgment, and entered a judgment in plaintiff's favor. Defendant appealed the trial court's judgment, and the Court of Appeals affirmed. *Arrowood Indemnity Co. v. Fasching*, 304 Or App 749, 469 P3d 271 (2020).

On defendant's petition, we allowed review to address what evidence a party must present to establish that documents created by a third party qualify for the business records exception. For the reasons explained below, we conclude that the party proffering the documents must present evidence of the third party's record-making practices sufficient to establish, as required by the text of OEC 803(6), that the documents were made close in time to the acts they describe, by—or from information transmitted by—a person with knowledge, as part of a regularly conducted business activity, and pursuant to a regular record-making practice. Because plaintiff failed to present such evidence, the trial court erred in ruling that the documents at issue qualified for the exception. Because that error affected the trial court's rulings on the parties' cross-motions for summary judgment, which the Court of Appeals affirmed, we reverse

---

[1] The full text of OEC 803(6) is set out below at 369 Or at 223.

the decision of the Court of Appeals and the judgment of the trial court, and we remand the case to the trial court for further proceedings.

## I.  BACKGROUND

Plaintiff initiated this civil action by filing a complaint asserting a breach of contract claim against defendant. In the complaint, plaintiff alleged that defendant had entered into a student loan contract with Citibank. Plaintiff further alleged that it had insured the loan and that, after defendant defaulted on the loan, it had paid a claim to Citibank. Based on its payment of the claim, plaintiff alleged that it was entitled to a judgment against defendant for the amount due under the contract.

Plaintiff later filed a motion for summary judgment and a supporting affidavit containing some different facts than plaintiff had alleged in its complaint—specifically, that defendant had obtained three student loans from Citibank, that Citibank had transferred the loans to Discover, and that Discover had filed the insurance claim that plaintiff had paid. Based on those facts, plaintiff asserted that it stood "in the shoes of" Discover.

To support its motion for summary judgment, plaintiff submitted documents it had received from Discover. The documents included a bill of sale and "loan transmittal summary" detailing loans transferred from Citibank to Discover. They also included, for each of three loans, (1) a copy of a loan application, (2) a copy of a disclosure form, (3) a summary of the history of disbursements, payments, and fees, and (4) a copy of a document transferring ownership of the loan from Discover to plaintiff.[2]

The documents contain hearsay, that is, out-of-court statements offered to prove the truth of the matters asserted. As a general rule, hearsay is inadmissible. OEC 802. But plaintiff asserted that the documents were admissible under

---

[2] Plaintiff also submitted copies of checks it had issued to Discover to pay Discover's claim. Defendant has acknowledged that the copies of the checks were properly authenticated business records, and those copies are not at issue on review.

OEC 803(6), which establishes an exception to that general rule for certain business records.[3]

To lay a foundation for the documents, plaintiff relied on an affidavit by one of its employees, McGough. In the affidavit, McGough averred:

"All documents attached hereto are either produced and maintained directly by Plaintiff or are documents from [Discover's] proof of claim which are adopted by the Plaintiff and relied upon in the ordinary course of Plaintiff['s] business. These records were made at or near the time of the occurrence or transaction, recorded by a person with knowledge, and as the Plaintiff's qualified custodian of records I affirm that the attachments are true and correct copies of documents maintained by and relied upon by Plaintiff in the ordinary course of its regular business functions."

McGough averred that the documents plaintiff had received from Discover showed that defendant had obtained loans in 1999, 2000, and 2001, and that his last payment on the loans was made in 2013. The documents themselves state that defendant made payments beginning in 2003 and that Citibank sold the loans to Discover in 2011.

McGough did not aver that she had knowledge of the record-making or record-keeping practices of either Citibank or Discover. And nothing in the affidavit addresses whether the documents were made and kept in the regular course of either Citibank's or Discover's business or whether it was the regular practice of either Citibank or Discover to make and keep such documents.

The summaries of the loan histories appear to be computer-generated reports. They cover activities from 1999 to 2013, a period that, according to the documents, includes years when Citibank owned the loans and years when Discover owned them. The summaries do not indicate when, by whom, or how the information they contain was initially reported and recorded. The summaries state that

---

[3] As noted below, plaintiff also asserted that some of the documents attached to McGough's affidavit were admissible on alternative grounds, but, because the court ruled that all the documents were admissible as business records, it did not rule on any alternative grounds for admitting those documents. *See* 369 Or at 252.

they were generated in 2013, but they do not state who generated them.

Defendant filed a cross-motion for summary judgment. He asserted that plaintiff's motion for summary judgment was dependent on the documents plaintiff had attached to its motion and that McGough's affidavit failed to lay the foundation required for the business records exception. He further asserted that, without the documents, plaintiff could not make out a *prima facie* case, and, therefore, the trial court had to deny plaintiff's motion for summary judgment and dismiss plaintiff's claims.[4]

After a hearing on the parties' motions, the trial court ruled that the documents plaintiff had received from Discover were admissible, stating that, "as long as the documents [were] received, incorporated, and relied upon by the assignee, they're still admissible as business records." Following that ruling, the trial court granted plaintiff's motion for summary judgment and denied defendant's motion for summary judgment.

Defendant appealed, and the Court of Appeals affirmed, ruling that documents created by one business and received by another business can qualify for the business records exception even if the proponent of the documents does not present evidence of the record-making practices of the business that created the documents. *Arrowood Indemnity Co.*, 304 Or App at 760-61. The Court of Appeals acknowledged that,

> "[w]here, as here, business records are offered through the testimony of one business's custodian of records and they include copies of another business's records, *the other business's records are not entitled to the same presumption of*

---

[4] OEC 803(6) sets out several characteristics that a record must have to qualify for the exception. In addition, it provides that, even if a record has those characteristics, it will not qualify for the exception if "the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness." In this case, in addition to asserting that plaintiff had failed to present a witness qualified to testify that the documents had the required characteristics, defendant argued that McGough's statements in the affidavit and the accompanying records "demonstrate a lack of trustworthiness" that weighed against admission of the documents because McGough had averred that the documents attached to the affidavit included a promissory note, but no promissory note was attached.

*reliability* as those prepared directly by the business whose records are presented by its records custodian in court. *That is because the proponent of the records is often unable to procure testimony regarding the third party's business process and is, therefore, not able to independently establish the reliability of that process.*"

*Id*. at 757 (emphases added). Nevertheless, the Court of Appeals concluded:

"[L]ike 'hearsay within hearsay,' which is not excluded if 'each part of the combined statements' fits within a proper hearsay exception, OEC 805, third-party business records contained within other business records satisfying OEC 803(6) *may themselves be admitted if they are shown to possess comparable indicia of reliability or trustworthiness*."

*Id*. (emphasis added). Thus, the Court of Appeals announced a rule that allows third-party records to qualify for the business records exception even if the proponent of the records cannot establish that the records were made and kept in the manner described in OEC 803(6).

On defendant's petition, we allowed review to determine the eligibility requirements for the business records exception, in particular, the eligibility requirements for documents created by one business but proffered by another business.

On review, defendant argues that records can qualify for the business records exception only if the proponent of the records presents testimony from a witness who has knowledge of the record-making practices of the business that originally created the record. In defendant's view, the trial court erred in admitting the records at issue because McGough lacked sufficient knowledge to lay a proper foundation to qualify the records for the exception. Defendant further argues that, as a result of the trial court's erroneous ruling that the records qualified for the exception, the trial court erred in granting plaintiff's motion for summary judgment and denying defendant's cross-motion for summary judgment.

In response, plaintiff argues that records created by one business can qualify for the business records exception if they are proffered by another business that has "adopted

and relied upon those records in the regular course of its own business, and where the records demonstrate sufficient indicia of trustworthiness." Relying on that interpretation of the exception, plaintiff argues that the trial court correctly admitted the documents attached to McGough's affidavit and, therefore, it correctly granted plaintiff's motion for summary judgment and denied defendant's cross-motion for summary judgment.

## II.   ANALYSIS

This case requires us to construe OEC 803(6), a provision of the Oregon Evidence Code. The Oregon legislature enacted the code in 1981. Or Laws 1981, ch 892. The code's provisions are statutes; consequently, when construing them, our task is to ascertain the legislature's intent. ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible."); *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 485, 326 P3d 1181 (2014) (so stating regarding the rules of evidence). To do so, we utilize "our traditional analytical framework, which focuses on the statute's text, context, and any helpful legislative history." *Crimson Trace Corp.*, 355 Or at 485; *see also State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (establishing framework).

In Part A of this section, we explain that the text and context of OEC 803(6) compel the conclusion that, to establish that a record is eligible for the business records exception, the proponent of the record must present evidence regarding the record-making practices of the business that created the record. In Part B, we respond to the arguments made by plaintiff and the dissent. In Part C, we apply our conclusion regarding the eligibility requirements for the business records exception to the facts of this case and conclude that plaintiff failed to present the required evidence regarding the record-making practices of the businesses that created the documents at issue and, therefore, the trial court erred in concluding that those documents qualified for the exception. Because that conclusion affected the trial court's rulings on the parties' motions for summary judgment, we remand the case to the trial court for further proceedings.

A.   *Statutory Construction of OEC 803(6)*

We begin with an overview of the Oregon Evidence Code provisions governing hearsay. Under the evidence code, hearsay is generally inadmissible. OEC 802. OEC 801(3) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 802 establishes the "hearsay rule." It provides, "Hearsay is not admissible except as provided in [OEC 801] to [OEC 806] or as otherwise provided by law." The hearsay rule "reflects a preference for testimony that is given in court, under oath, and subject to cross-examination." *State v. Edmonds*, 364 Or 410, 412, 435 P3d 752 (2019). As we have explained,

> "[t]he objection to admissibility, based on the rule against hearsay, furthers an important legal policy of preventing the trier of fact from considering the possible truthfulness of out-of-court statements, unless the statements have sufficient guarantees of trustworthiness. The purpose of the hearsay rule is to guard against the risks of misperception, misrecollection, misstatement, and insincerity, which are associated with statements of persons made out of court. Safeguards in the trial procedure, such as the immediate cross-examination of the witness and the opportunity of the trier of fact to observe the demeanor of the witness who swears or affirms under the penalty of perjury to tell the truth, are designed to reduce those risks."

*State v. Carlson*, 311 Or 201, 212, 808 P2d 1002 (1991). As this court has long recognized, hearsay evidence is presumptively excluded because of its untrustworthiness. *See, e.g.*, *Sheedy v. Stall*, 255 Or 594, 596, 468 P2d 529 (1970).

The evidence code contains several exceptions to the general prohibition against hearsay. OEC 803 (establishing exceptions that apply regardless of whether the declarant is available to testify); OEC 804 (establishing exceptions that apply only if the declarant is unavailable to testify); *see also* OEC 801(4) (excluding certain types of statements from the definition of "hearsay"). The party seeking the admission of hearsay bears the burden of proving that the hearsay satisfies the requirements of a hearsay exception. *See, e.g.*, *State v. Jensen*, 313 Or 587, 591 n 5, 837 P2d 525 (1992) (noting that

a party seeking to admit evidence under OEC 803(2) must establish that the requirements of that exception have been met); *State v. Rodriguez-Castillo*, 345 Or 39, 46, 188 P3d 268 (2008) (explaining that hearsay statements are admissible under OEC 805 only if the proponent can "show that each out-of-court statement either came within an exception to the hearsay rule or did not constitute hearsay").

    1.   *Text of OEC 803(6)*

        This case concerns OEC 803, which establishes several specific hearsay exceptions, OEC 803(2)-(27), and one residual exception, OEC 803(28). In the trial court, plaintiff asserted—and the trial court ruled—that the records at issue qualified for the business records exception, which is a specific exception defined by OEC 803(6). Plaintiff did not argue that the records qualified for the residual exception.

        OEC 803 provides, in part:

> "The following are not excluded by [the hearsay rule, OEC 802], even though the declarant is available as a witness:

> "\*\*\*\*\*

> "(6)  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

Thus, the text of OEC 803(6) sets out several characteristics that a record must have to qualify for the business records exception. The record must (1) describe "acts, events, conditions, opinions, or diagnoses," (2) have been "made at or near the time" of those acts, events, conditions, opinions, or

diagnoses, (3) have been made "by, or from information transmitted by, a person with knowledge," (4) have been "kept in the course of a regularly conducted business activity," and (5) have been made because it "was the regular practice of that business activity to make" such records.

A party seeking to utilize the exception must prove that the record it is proffering has each of those characteristics, and the party must do so through "the testimony of the custodian or other qualified witness." And, even if the party does that, the record will not qualify for the exception if "the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness."

The characteristics set out in OEC 803(6) that relate to when, by whom, why, and how a record is created provide assurances of accuracy. Each characteristic provides a different type of assurance. The requirement that the record be created close in time to the acts, events, conditions, opinions, or diagnoses that it describes increases the likelihood that record is based on a clear memory. The requirement that the record be made by, or from information transmitted by, a person with knowledge, ensures that the record is based on first-hand observations. The requirement that the record be kept in the course of a regularly conducted business activity increases the likelihood that the record is accurate because, when a person is engaged in such an activity, the person has a heightened interest in being attentive and careful because the person's position and the business's regular operations depend on the person's accuracy. And, finally, the requirement that the record be the result of a regular record-making practice increases the likelihood that the record is accurate because such practices are designed to create reliable records and their routine use creates habits of precision.

The text of OEC 803(6) reflects the legislature's determination that, to be eligible for the business records exception, a record must have several characteristics that, together, provide adequate assurances of the accuracy of the information in the record. As the commentary to OEC 803(6) states, the idea underlying the business records exception is that certain records possess "unusual reliability" that has

been ascribed to the "duty of the record keeper to make an accurate record," the "actual reliance of the business" on the records, and "the regular entries and systematic checking which produce habits of precision." Legislative Commentary to OEC 803(6), *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 803.06[2], 820 (7th ed 2020).

To be eligible for the exception, a record must have all the characteristics set out in OEC 803(6). Consequently, if, for example, a declarant is not acting in the regular course of business, the declarant's statement is not eligible for the exception, even if the statement is recorded in a document created as a regular practice. As the commentary to OEC 803(6) states, "[i]f the supplier of the information does not act in the regular course of business \*\*\*, an essential link is broken: the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." Legislative Commentary to OEC 803(6), *reprinted in* Kirkpatrick, *Oregon Evidence* § 803.06[2] at 820-21. There may be other characteristics, or combinations of characteristics, than those set out in OEC 803(6) that could support a conclusion that a record is reliable, but only those records with all the characteristics set out in OEC 803(6) are eligible for the business records exception as the legislature has defined it.

Thus, OEC 803(6) does not apply to all records created, used, or relied on by a business. It applies only to records that are the product of certain record-making practices. Consequently, a party seeking to utilize the exception must present evidence regarding those practices. Indeed, as Mueller and Kirkpatrick explain in their treatise on the Federal Rules of Evidence, the need for that evidence is why the analogous federal business records exception requires foundation testimony by the custodian of the record or another qualified witness:

"Every [hearsay] exception requires a factual showing to bring it into play, but the business records exception is unusual in expressly including [the requirement for such foundation testimony]. *The reason for doing so is that the elements of the exception are elaborate and require what amounts to an 'insider' to describe the recordmaking process.*"

Christopher B. Mueller & Laird C. Kirkpatrick, 4 *Federal Evidence* § 8:78, 725 (4th ed 2013).[5]

In sum, the plain text of OEC 803(6) shows that a party seeking to utilize the business records exception to the hearsay rule must present evidence sufficient to establish that the record has the characteristics set out in OEC 803(6) itself, each of which provides a particular assurance of accuracy. Although the legislature could have provided that hearsay is admissible if it is reliable, it did not. Instead, it established exceptions—including the business records exception—that, by their own terms, require specific indicia of reliability. The legislature did not leave it to courts to come up with their own indicia of reliability.

The characteristics that the legislature chose to require as indicia of reliability in OEC 803(6) relate to the creation of the record. Thus, a party seeking to utilize the business records exception must present evidence about the record-making practices of the business that created the record. Because the elements of the exception are elaborate, the party seeking the exception must present "what amounts to an 'insider' to describe the recordmaking process." Mueller & Kirkpatrick, 4 *Federal Evidence* § 8:78 at 725.

---

[5] OEC 803(6) was modeled on the then-existing federal statutory business records exception, FRE 803(6), which applied the exception to the following:

"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

FRE 803(6) (1980). At the time that the legislature enacted OEC 803(6), the federal rule was identical to OEC 803(6) except for the last clause: Whereas the federal rule affirmatively places the burden for proving lack of trustworthiness on the opponent of the evidence, the Oregon rule does not identify who has the burden to show that a record that meets the express requirements of the exception is nevertheless untrustworthy. *See* OEC 803(6) (excepting business records from the hearsay rule "unless the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness"). As noted below, Congress later approved an amendment to the federal rule that permits a proponent to substitute, in place of a qualified witness's in-court testimony, a certification that meets certain requirements. *See* 369 Or at 242. Otherwise, the federal rule has remained substantively unchanged since its 1975 codification.

　　2.　*Context of OEC 803(6)*

　　　　The context of OEC 803(6)—including other provisions of OEC 803 and case law construing prior versions of the state statutory business records exception—confirms that, in order for a record to qualify for the business records exception under OEC 803(6), the proponent of the record must show that the record has the characteristics set out in OEC 803(6) itself, and, to do so, the party must present testimony about how the record was made.

　　　　a.　Other provisions of OEC 803

　　　　As mentioned, OEC 803 includes several specific exceptions and one residual exception, OEC 803(28). When a party seeks to use an exception for a record that does not satisfy the requirements of any of the specific exceptions, the party may use the residual exception if the record satisfies the requirements of that exception, which provides:

　　"The following are not excluded by [the hearsay rule, OEC 802], even though the declarant is available as a witness:

　　"* * * * *

　　"(28)(a)　A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:

　　"(A)　The statement is relevant;

　　"(B)　The statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts; and

　　"(C)　The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence.

　　"(b)　A statement may not be admitted under this subsection unless the proponent of it makes known to the adverse party the intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing, or as soon as practicable after it becomes apparent that such statement is probative of the issues at hand, to provide the adverse party with a fair opportunity to prepare to meet it."

The existence of OEC 803(28) shows that the legislature recognized that there may be occasions when a hearsay statement should be excepted from the general prohibition against hearsay even though it does not satisfy the requirements of any of the specific hearsay exceptions. It also shows that the legislature chose to establish requirements for excepting such statements. The legislature did not simply leave it to trial courts to determine what hearsay statements are sufficiently reliable to be excepted. A statement must satisfy the requirements of one of the specific exceptions or the residual exception. The specific exceptions are not to be stretched to apply to statements that do not satisfy their requirements; the residual exception can be used for those statements, provided they satisfy its requirements.

Notably, the residual exception in OEC 803(28) requires more than reliability. As the legislative commentary to it states, OEC 803(28) "allows evidence to be admitted which could not be admitted under any other hearsay exception, *if* a court finds that it has *guaranties of trustworthiness* equivalent to or exceeding the guaranties found in the other exceptions, *and* that it is *highly probative and necessary*." Legislative Commentary to OEC 803(28), *reprinted in* Kirkpatrick, *Oregon Evidence* § 803.28[2] at 887 (emphases added). The legislature intended OEC 803(28) to apply in "exceptional cases." *Id.* at 888. It is to "be used very rarely, and only in situations where application of the hearsay rule and its other exceptions would result in injustice." *Id.* It is "not a broad grant of authority to trial judges to admit hearsay statements." *Id.*

Thus, what OEC 803 as a whole shows is that the legislature did not intend to allow trial courts to except hearsay from the prohibition against hearsay based on their own criteria. If a record does not satisfy the requirements for any of the specific exceptions, then it can be excepted from the hearsay prohibition only if it satisfies the requirements of the residual exception. Consequently, in a case like this, a court can admit a record pursuant to OEC 803(6) only if the proponent of the record proves that the record was made in the manner described in OEC 803(6). If it was not, the record may be admissible under the residual exception,

but only if the proponent proves that the record satisfies the requirements of that exception, that is, only if the proponent proves that the record is reliable, highly probative, and necessary.[6]

> b.  Case law regarding the business records exception

This court's case law provides further support for our conclusion that, in order for a record to qualify for the business records exception under OEC 803(6), the record must have the characteristics set out in OEC 803(6) itself. Although this court has not construed OEC 803(6) in many cases, the business records exception was "an established feature of Oregon law" when the evidence code was enacted in 1981, *id.* at 820, and in cases involving the substantially similar predecessor statute to OEC 803(6), enacted in 1941, this court had held that the business records exception did not apply to records that lacked one or more of the characteristics set out in the exception itself.[7] For example, this court had held that statements did not qualify for the exception when they were not made close in time to the events they described,[8] and when they were not made in the regular course of business—*e.g.*, when they were not made by a person acting in the course of a regularly conducted business activity,[9]

---

[6] As mentioned above, in this case, plaintiff did not invoke the residual exception.

[7] Oregon Laws 1941, chapter 414, which adopted the Uniform Business Records as Evidence Act, provided, in part:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

*Id.* § 2. That exception was later codified as *former* ORS 41.690 (1953), *repealed by* Or Laws 1981, ch 892, § 98.

[8] *See, e.g.*, *Hansen v. Bussman*, 274 Or 757, 786, 549 P2d 1265 (1976) (holding that a letter dated June 8, 1971, did not qualify for the exception because it was not made "at or near the time" of events referred to in the letter that had occurred in 1970); *Allan v. Oceanside Lumber Co.*, 214 Or 27, 48, 328 P2d 327 (1958) (holding same as to a record of examination and diagnosis that had occurred one year before the record was created).

[9] *See, e.g.*, *Snyder v. Portland Traction Company*, 182 Or 344, 351, 185 P2d 563 (1947) (holding that a police report based on bystanders' statements was

or when they were not made as a regular practice of the business, including when a record was a summary of a business's books made for the purpose of enforcing a lien.[10] In all those cases, this court focused on whether the records had the characteristics set out in the exception itself, not on whether the records could be regarded as reliable for other reasons.

*Allan v. Oceanside Lumber Co.*, 214 Or 27, 328 P2d 327 (1958), is particularly instructive. In *Allan*, the plaintiff proffered a document entitled "Abstract of Clinical Record" to prove that he had suffered a bone fracture. The document was a form created by the Federal Security Agency - Public Health Service, it carried the seal of the United States Public Health Service, and it was signed by a person identified as a "Medical Officer Deputy." As its title indicated, the document appeared to summarize information from the plaintiff's health record. Among other things, the document included an "Examination Summary" that stated, "Fracture contusion of coccyx. Fracture of 4th coccygeal segment." Over the defendant's objection, the trial court admitted the document.

On appeal, this court held that the document did not qualify for the business records exception. It noted that the document had been prepared one year after the examination and diagnosis it described and that it

> "contains no explanation as to how the 'abstract' was compiled from the 'clinical record' or who made it. Likewise, it does not indicate what information is contained in the 'clinical record' or where the latter is kept."

---

"pure hearsay" and did not qualify for the business records exception because the bystanders were not acting in the regular course of business); *Miller v. Lillard*, 228 Or 202, 212, 364 P2d 766 (1961) (holding same as to a livestock officer's report that was based on others' statements).

[10] *Buckler Co. v. Am. Met. Chem. Corp.*, 214 Or 639, 645, 332 P2d 614 (1958) (holding that an accountant's summary of the plaintiff's books that was "a memorandum prepared long after the event for the purpose of enforcing a lien" did not qualify for the business records exception); *see also, e.g.*, *Scanlon v. Hartman*, 282 Or 505, 511, 579 P2d 851 (1978) (explaining that, because records that a business does not make regularly are not made in "the regular course of business," they are "generally considered inadmissible as business records," and holding that a letter from a doctor to the plaintiff's attorney did not qualify for the exception because it was not made pursuant to a regular practice).

*Id.* at 47. Because the document had not been prepared "at or near the time of" the examination and diagnosis and because the plaintiff had failed to present evidence of the "mode of preparation" of the document, this court held that the conditions for the business records exception had not been met. *Id.* at 48.

Two aspects of *Allan* are important to this case. First, when determining whether the document was admissible, this court framed the issue as whether the plaintiff had established that the document had the characteristics set out in the exception itself, not on whether the document—a form that was created by, and carried the seal of, a federal agency and had been signed by a medical officer—could be considered reliable for other reasons. Second, this court concluded that the document—which, on its face was a summary of other information, like the loan summaries in this case—did not qualify for the business records exception in the absence of information about how it was prepared. Thus, *Allan* shows that this court has held that eligibility for the business records exception is contingent upon a showing that the proffered record has the characteristics set out in the exception, a showing that necessarily requires evidence of the record-making practices of the business that created the record.

3.   *Summary of analysis of text and context of OEC 803(6)*

To summarize, the plain text of OEC 803(6) provides that hearsay is excepted from the general hearsay prohibition if it has certain, listed characteristics that relate to the creation of the record. Consequently, a party seeking to utilize the exception to introduce hearsay must present evidence regarding the record-making practices of the business that created the hearsay. That conclusion is reinforced by the statutory context of OEC 803(6): When OEC 803 is viewed as a whole, it is clear that hearsay must satisfy either the requirements of a specific exception or the requirements of the residual exception, and this court's cases interpreting the substantially similar predecessor business records exception treated the characteristics set out in the exception itself as requirements.

B.   *Responses to Plaintiff and the Dissent*

Plaintiff and the dissent make several arguments for a different construction of OEC 803(6). But, as we explain below, those arguments are unpersuasive. First and foremost, they are incompatible with the text and context of OEC 803(6). Second, plaintiff's argument that a hearsay statement qualifies for the business records exception if it is made pursuant to a "duty to report" is based on a misreading of case law; such a duty may be relevant to whether a declarant was engaged in a "regularly conducted business activity," but it is not sufficient to satisfy the other express requirements of OEC 803(6). Third, plaintiff's argument that enforcement of the express requirements of OEC 803(6) is too onerous is based on policy concerns, which are properly addressed to the legislature. Fourth and finally, plaintiff and the dissent rely on cases from other jurisdictions, but, as we explain below, those cases are not persuasive.

1.   *Plaintiff's proposed rule is incompatible with the text and context of OEC 803(6).*

Plaintiff argues that the documents it received from Discover qualify for the business records exception, but plaintiff does not argue that the documents have the characteristics set out in OEC 803(6). Instead, plaintiff urges this court to announce, as a new rule, that "[t]hird-party records are admissible under OEC 803(6) where the party propounding the records adopted and relied upon those records in the regular course of its own business, and where the records demonstrate sufficient indicia of trustworthiness." According to plaintiff, under its proposed rule, "[w]hether sufficient indicia of trustworthiness exist to admit third-party business records will generally be a matter committed to the discretion of the trial court." Plaintiff offers a list of factors that a trial court should consider when exercising that discretion:

"To determine whether third-party records are sufficiently trustworthy, the trial court should consider whether the records contain subjective or objective information, whether the records evince regular entries of readily ascertainable information, such as records of payments, deposits, or measurements, whether the third party was under a legal

obligation to make accurate records, whether the third party was under an obligation to report accurate information to the propounding party or other entities in the chain of custody for the records, whether the records are of a type commonly and widely relied on by one or more industries, whether the records appear on their face to be complete, whether the records appear on their face to contain any inaccuracies or inconsistencies, whether the party opposing admission offers evidence that the records are inaccurate or incomplete, and whether any other information about the records or the circumstances surrounding their authentication suggests the records are not trustworthy."

Under plaintiff's rule, a party would not have to present evidence of how the records were created. Therefore, a party seeking the admission of records created by a third party would not have to present evidence regarding the record-making practices of the third party.

The most obvious and most important problem with plaintiff's proposed rule is that it is inconsistent with the text of OEC 803(6). As discussed above, the legislature expressly identified the characteristics that a record must have to qualify for the business records exception. Plaintiff's argument assumes that this court can replace those characteristics with others. We cannot. When construing a statute, our task is to ascertain the legislature's intent. ORS 174.020. The text of a statute is the best evidence of that intent, and we are not to omit what the legislature has inserted or insert what it has omitted. ORS 174.010. Plaintiff would have us do both. Plaintiff's interpretation of OEC 803(6) essentially deletes the express requirements of OEC 803(6) and replaces them with requirements of "reliance" and "sufficient indicia of trustworthiness." As we understand it, plaintiff's interpretation would permit the admission of records under OEC 803(6) even if, for example, they were not made at or near the time of the acts described. That interpretation is simply incompatible with the text of OEC 803(6).

Plaintiff's rule would create an end run around the requirements of OEC 803(6). Under plaintiff's rule, a record that could not be admitted if it was still in the possession of the business that created it could be admitted if it was transferred to a second business that relied on it. So, in this

case, if the documents at issue were still in the possession of Discover, but Discover could not establish, for example, that they were made at or near the time of the acts described, the documents would not qualify for the business records exception. But, under plaintiff's rule, if Discover passed the records along to another business that relied on them, that business would not have to show that the records met the requirements of the rule. That result would be inconsistent with the text and context of OEC 803(6). We agree with defendant that "there is no rule of evidence that allows Plaintiff to 'adopt' records of its insured and thereby sanitize them from basic rules of evidence that its insured or assignor would have had to comply with, had it brought its own claim."[11]

---

[11] As mentioned, the Court of Appeals analogized the documents at issue in this case to "hearsay within hearsay," stating that,

> "like 'hearsay within hearsay,' which is not excluded if 'each part of the combined statements' fits within a proper hearsay exception, OEC 805, third-party business records contained within other business records satisfying OEC 803(6) may themselves be admitted if they are shown to possess comparable indicia of reliability or trustworthiness."

*Arrowood Indemnity Co.*, 304 Or App at 757. The Court of Appeals was correct to conclude that layered business records can qualify for the business records exception, but it was incorrect to conclude that all that a party needs to show regarding the inner layer is that it has "comparable indicia of reliability or trustworthiness." *Id.* The general rule for layered hearsay applies to layered business records: "Hearsay included within hearsay is not excluded under [the hearsay rule, OEC 802] if *each part* of the combined statements *conforms with an exception set forth in [OEC 803] or [OEC 804]*." OEC 805 (emphases added). The layered hearsay rule requires a showing that each layer satisfies the requirements of one of the statutory exceptions to the hearsay rule; it does not allow for a showing of "comparable indicia of reliability or trustworthiness."

As Mueller and Kirkpatrick explain regarding FRE 803(6), "[i]f the source of information is an outsider to the business, the exception alone is not enough and the record can be admitted only if what the source said is itself within an exception." Mueller & Kirkpatrick, 4 *Federal Evidence* § 8:82 at 759. Therefore, "[w]here the records of one business integrate records from another, or include information gleaned from records of another, often the result is admissible if both sets of records satisfy the exception." *Id.* at 760. "In these cases, foundation testimony should show that not only the records of the first business (the source) but also the records of the second (the last entry) fit the exception." *Id.* at 760-61.

But, as Mueller and Kirkpatrick note,

> "some courts make do with a single knowledgeable witness, and the decisions leave the impression that courts are satisfied by the fact that the second business sees fit to use the information or records of the first business as a kind of independent guarantor that the incorporated data or records are trustworthy, and not as real evidence that they satisfy the exception independently."

Although plaintiff does not make a text-based argument, the dissent does. According to the dissent, if a record is transferred from one business to another, the record can become the record of the receiving business and, therefore, the proponent of the record need only present evidence of the receiving business's record-making practices. 369 Or at 254-55 (Garrett, J., dissenting). Essentially, the dissent's view is that a record "made" by one business can be "made" again by another business if that business incorporated the record into its own files and relied on it. According to the dissent, if a record was created by one business, and was later transferred to second business that "integrated" the record into its own records, then the relevant record-making practices are those of the second business. *Id.* (Garrett, J., dissenting).

To explain that contention, the dissent uses an example in which Company A records information in a document and then Company B receives that document and integrates it into a file. In the dissent's view the entire "file" is a "record" for the purposes of OEC 803(6), so Company B can satisfy the requirements of the rule by presenting evidence about how it created its file.

The dissent's view is based on a misunderstanding of what constitutes a "record" for the purposes of OEC 803(6). The plain text and context of OEC 803(6) make clear that the "record" is the statement that the proponent is offering for the truth of the matter asserted. OEC 803(6) is an exception to the hearsay rule; it concerns hearsay statements. Thus, when trying to determine what the "record" is for the purposes of the business records exception, the question to ask is simply, "What statements are being offered for the truth of the matters asserted?" If, as here, a party proffers documents describing loan activities to prove that the activities occurred, the descriptions of the loan activities are the hearsay statements at issue; they are the "records" that must have been made in the manner required by OEC 803(6). In

---

*Id.* at 761. Plaintiff and the dissent rely on decisions by those courts, but, as we explain below, those decisions do not involve the type of analysis that our case law requires us to perform. 369 Or at 248-49; 249 n 21). Moreover, as we have explained, the text and context of OEC 803(6) show that the legislature did not intend for the admission of hearsay simply because a business relied on it.

short, the business that made the statements that are being offered for their truth is the business whose record-making practices must be shown.[12]

As discussed above, OEC 803(6) requires, among other things, that a record be made "at or near the time" of the act that it describes. It is the close temporal proximity between the act and the making of the record that matters because it is that closeness that helps ensure that the record is based on an accurate recollection. If a record was not made at or near the time of the act it describes, transferring the record does not cure that deficiency. If, as in *Allan*, a record is created a year after the act it describes, it does not qualify for the exception because the delay reduces the reliability of

---

[12] The dissent suggests that a "record" can be a file that contains hundreds of documents from various sources. 369 Or at 254 (Garrett, J., dissenting). It bases that suggestion, in part, on the fact that OEC 803(6) can apply to a "data compilation." *Id.* (Garrett, J., dissenting). But that fact is not inconsistent with our understanding of what constitutes a record. For the purposes of OEC 803(6), a "record" is a statement that describes "acts, events, conditions, opinions, or diagnoses." Records may contain multiple facts or bits of data. They may be in the form of entries in a paper ledger or a computer database. The point is that they are statements that are being offered for the truth of the matters asserted, and, to be eligible for the business records exception, the proponent must prove that they were made in the manner required by OEC 803(6). When multiple statements are made pursuant to the same practice, like ledger or database entries, the proponent can lay a foundation for each entry simply by describing that practice.

So, in the case of a computer database, information may be entered into a computer at different times, by different persons, and may be later printed out in a report. Just as it does for shopkeepers who keep paper ledgers, the business records exception relieves businesses from having to call each person who made a database entry recording an event. But that relief is conditioned on testimony about the data entry and report-making practices of the business.

Consequently, when a party seeks to utilize the business records exception, it should first identify the statements it wants admitted to prove the truth of the matters asserted and should then establish that those statements were made in the manner required by OEC 803(6).

The dissent suggests that the records here are not being used to prove the truth of the matter asserted (that is, that they are not being used to prove the history of the loans between defendant and Citibank and Discover), but instead are being used to show that defendant is liable to plaintiff. 369 Or at 255 (Garrett, J., dissenting) ("The 'matter' being asserted does not have to be understood as the loan from Discover to defendant many years ago; it can also be understood as the creation of a liability owed to plaintiff many years later."). That view ignores the basic fact that because, as plaintiff itself asserts, it "stands in the shoes of" Discover, the only way that defendant can be liable to plaintiff is if defendant was liable to Discover and its predecessor, and proof of that liability depends on the truth of the matters asserted in the records at issue.

the record. Transferring that record to a second business that puts it in a file close in time to the transfer does not undo the effect of the initial delay. Likewise, if a record was not initially made "by, or from information transmitted by, a person with knowledge," "kept in the course of a regularly conducted business activity," or made because it "was the regular practice of that business activity to make" such a record, transferring it to another business cannot change those facts.

To recap, plaintiff's proposed rule—that records qualify for the business records exception if the proponent shows reliance and sufficient indicia of trustworthiness—is inconsistent with the text and context of OEC 803(6). Plaintiff does not engage in our required methodology for statutory interpretation; it does not even attempt a text-based analysis. The dissent does, but its attempt is unavailing. The dissent suggests that, if a record created by one business is received and put in the file of another business, the record can qualify for the business records exception if the proponent of the record presents evidence of the receiving business's practices. But the characteristics set out in OEC 803(6) relate to the initial creation of the document offered for the truth of its assertions, not to the later receiving and filing of the document.

   2.   *Plaintiff's "duty to report" argument is based on a misunderstanding of case law.*

In support of its argument that records can qualify for the business records exception under OEC 803(6) even if they do not have the characteristics set out in the rule, plaintiff cites cases in which courts have discussed whether the declarant of a hearsay statement was acting pursuant to a "duty to report." Relying on those cases, plaintiff urges this court to hold that a record qualifies for the exception if the declarant was acting pursuant to such a duty. But, as we explain below, none of those cases establish that a "duty to report" is sufficient to qualify a record for the exception. A "duty to report" may be relevant to whether the declarant was engaged in a "regularly conducted business activity," but it is not sufficient to establish the remaining, express requirements of OEC 803(6).

Plaintiff cites *Johnson v. Lutz*, 253 NY 124, 170 NE 517 (1930), an early business records exception case in which the New York Court of Appeals affirmed a trial court's exclusion of a police report that contained statements made to a police officer by persons at the scene of a traffic accident. The court explained that the New York legislature had enacted the state's statutory business records exception

> "to permit a writing or record, made in the regular course of business, to be received in evidence, without the necessity of calling as witnesses all of the persons who had any part in making it, provided the record was made as a part of the duty of the person making it, or on information imparted by persons who were under a duty to impart such information."

*Id.* at 128, 170 NE at 518.[13] The court further explained that the exception permits the introduction of records "made in the course of business by persons who are engaged in the business upon information given by others engaged in the same business as part of their duty." *Id.* But the exception "was not intended to permit the receipt in evidence of entries based upon voluntary hearsay statements made by third parties not engaged in the business or under any duty in relation thereto." *Id.* Therefore, the court concluded, the New York legislature "never intended" its statutory exception to apply to records like the police report at issue in the case, which contained statements from persons who were not acting pursuant to a business duty. *Id.* at 129, 170 NE at 519.

This court relied on *Johnson* in *Snyder v. Portland Traction Company*, 182 Or 344, 185 P2d 563 (1947), which

---

[13] New York codified its business records exception in 1928:

"[Civil Practice Act] § 374-a. *Admissibility of certain written records.* Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business[] to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility."

1928 NY Laws, ch 532, § 1.

also involved a police report of a traffic accident. Citing *Johnson*, this court held that the report did not qualify for Oregon's then-existing statutory business records exception because the report was based on statements made to a police officer by persons at the scene of the accident who were not acting in the "'regular course of any business, profession, occupation, or calling.'" *Id.* at 351 (quoting *Johnson*, 253 NY at 127, 170 NE at 518).

Relying on *Johnson* and *Snyder*, plaintiff argues that a statement can qualify for the business records exception if it is made pursuant to a "duty to report." Plaintiff misunderstands *Johnson* and *Snyder*. In both those cases, the courts held that records did not qualify for the business records exception because the declarants were not acting in the regular course of business, in that they did not have a "duty to report." But the requirement that a record be made in the regular course of business is only one of the eligibility requirements of the exception, and *Johnson* and *Snyder* do not hold otherwise. In keeping with that understanding, this court's cases decided since *Johnson* and *Snyder* treat all the characteristics set out in the exception as requirements for the exception; they do not focus solely on whether the declarant had a "duty to report." *See* 369 Or at 229-32 (describing cases).

3. *Plaintiff disagrees with the legislature's policy choices.*

The arguments made by plaintiff and the dissent appear to be rooted in a disagreement with the legislature's policy choices regarding the scope of the business records exception. Plaintiff and the dissent both argue that compliance with the requirements of the exception is too onerous. And plaintiff argues that there should be a special exception for bank records. We address those arguments in turn.

First, satisfying the requirements of OEC 803(6) is not too onerous, especially given that the exception allows a party to use hearsay—instead of in-court testimony by a witness who is under oath and subject to cross-examination—to prove a disputed fact. All that the legislature has chosen to require, and all that we are holding, is that a party seeking to utilize OEC 803(6) must put on evidence regarding

the record-making practices of the business that created the record sufficient to establish that the record has the characteristics set out in the rule itself. To do so, a party can call a witness from the business that created the record.[14] Or, a party can call another witness who can testify about the practices of the business that created the record.[15] Thus, a party can call the current custodian of a record if, for example, the custodian became familiar with the record-making practices of the business that created the record in the course of acquiring the record or deciding to bring a legal action based on it. Certainly, when a business regularly acquires loan accounts from third parties, the business could, as part of its acquisition process, obtain affidavits about the third parties' record-making practices, especially if the business anticipates bringing legal actions based on the accounts.

To be clear, we are not holding that a party must present witnesses with personal knowledge of the information in the record. The purpose of the business records exception is to eliminate the need to do so. *See Johnson*, 253 NY at 128, 170 NE at 518 (explaining that the exception "permits the introduction of shopbooks without the necessity of calling all clerks who may have sold different items of account"). But, in lieu of such testimony, the exception, as codified in OEC 803(6), requires that records have certain characteristics regarding when, by whom, why, and how they are made and kept, and the exception requires that a custodian or other qualified person testify about those characteristics.

---

[14] *See, e.g.*, *State v. Cain*, 260 Or App 626, 630, 320 P3d 600 (2014) (state called the payroll coordinator of the defendant's employer to lay a foundation for admission, under OEC 803(6), of information that the employer had provided to the Employment Department); *Douglas Creditors Ass'n v. Padelford*, 181 Or 345, 348, 182 P2d 390 (1947) (creditor association, in seeking to collect a debt it acquired from a doctor's office, called the doctor to lay a foundation for a document created in his office that showed an outstanding balance due).

[15] *See, e.g.*, *U.S. v. Franco*, 874 F2d 1136, 1140 (7th Cir 1989) (drug enforcement agent laid foundation for the records of a money exchange business, where the agent had familiarity with the business's record-making practices); *United States v. Hathaway*, 798 F2d 902, 906 (6th Cir 1986) (concluding that "there is no reason why a proper foundation for application of [FRE] 803(6) cannot be laid, in part or in whole, by the testimony of a government agent or other person outside the organization whose records are sought to be admitted," and upholding admission of records seized from a firm where an FBI agent had laid the foundation for admission under FRE 803(6)).

Such testimony necessarily must include information about the practices of the business that initially made and kept the record. As the commentary to OEC 803(6) explains, the proponent of evidence is not required

> "to produce, or even identify, the specific individual upon whose firsthand knowledge the record is based. A sufficient foundation is laid if the proponent shows that it was the regular practice of the activity to base such a record upon a transmission from a person with knowledge. Thus, in the case of contents of a shipment of goods, it is sufficient to produce a report from the company's computer programmer or a person having knowledge of the particular record system."

Legislative Commentary to OEC 803(6), *reprinted in* Kirkpatrick, *Oregon Evidence* § 803.06[2] at 822; *see also* Mueller & Kirkpatrick, 4 *Federal Evidence* § 8:78 at 727-28 ("The regular custodian of the records can lay the necessary foundation [for admission under FRE 803(6)] by describing the record-making process, and so can one who supervised the making of the record. Others too can provide the necessary information: What is important is that the witness be familiar with the pertinent record-making practices of the business, and with the manner in which records of the particular sort being offered are made and kept, and these points may be shown by anyone with the appropriate knowledge." (Footnotes omitted.)).

The dissent expresses concern that, if records were transferred a long time ago, the business that currently holds them may not know whether the records have the characteristics required by OEC 803(6). 369 Or at 255-56 (Garrett, J., dissenting). For example, the business that holds the records may not know whether the records were created at or near the time of the act that they describe or whether they were made by, or from information transmitted by, a person with knowledge. We acknowledge that possibility, but it is not a reason to disregard the express requirements of OEC 803(6). Different businesses exercise different degrees of care, both when making records and when relying on them. Some businesses are diligent, and others are negligent. Just because a business has chosen to rely on hearsay does not mean that

the legislature would want a court to do so. Businesses may rely on hearsay in their daily affairs, but courts do not.

Even assuming that, in some circumstances, it may not be possible for a party to satisfy the requirements of OEC 803(6), that possibility does not justify disregarding those requirements. As discussed above, the legislature created a residual hearsay exception that allows for the admission of hearsay that does not satisfy the requirements of a specific exception if the hearsay is reliable, highly probative, and necessary. So, if a business cannot lay the required foundation for the business records exception, it can seek to use the residual exception, provided that it can satisfy the requirements of that exception. But if it cannot satisfy the requirements of either of those exceptions, then—in keeping with the legislature's intent—the record cannot be admitted.

Finally, and most importantly, the concern that the express requirements of OEC 803(6) are too difficult to satisfy is a policy concern that should be presented to the legislature. As mentioned, plaintiff proposes a variety of factors for trial courts to consider when determining whether a record is sufficiently reliable to be eligible for the business records exception. But those are not the factors the legislature has chosen, and whether they provide adequate assurances of reliability is a question for the legislature.

We note that, in 2000, Congress amended FRE 803(6) to allow business records proponents to avoid, "under certain circumstances[,] *** the expense and inconvenience of producing time-consuming foundation witnesses." FRE 803(6), advisory committee's note to 2000 amendment. That amendment permits a proponent to substitute, in place of a qualified witness's foundation testimony, a certification that meets certain requirements. FRE 803(6) (as amended in 2000). But, since 1981, the Oregon legislature has not altered the Oregon business records exception to adopt that amendment, nor any other that would change the required foundation testimony for the exception.

In addition to arguing that the requirements of OEC 803(6) are too onerous, plaintiff suggests that there should be a special rule for bank records. Both defendant and *amicus curiae* Oregon Trial Lawyers Association argue

against such a special rule and dispute plaintiff's assertion that bank records are particularly reliable; they point out that banks have been found to have committed mistakes and engaged in deceptive practices in connection with student loans. Regardless of whether bank records are particularly reliable, the simple response to plaintiff's request for a special rule for bank records is that the legislature did not, and we cannot, create one as part of OEC 803(6). It may be that most banking records have the characteristics required by the OEC 803(6) because banks are careful in their record making; if so, it should not be too onerous for banks to present evidence regarding their processes.

   4.   *Plaintiff's reliance on other jurisdictions' cases is misplaced.*

      Finally, plaintiff and the dissent rely on cases from other jurisdictions, including cases from federal circuit courts interpreting FRE 803(6), the federal business records exception whose language the Oregon legislature borrowed when enacting OEC 803(6). Those cases are not persuasive for several reasons.

      First, our task is to interpret the intent of the Oregon legislature, which enacted OEC 803(6) in 1981. Most of the federal circuit cases cited by plaintiff and the dissent were decided after the enactment of OEC 803(6) and, therefore, could not have affected the legislature's intent in enacting OEC 803(6). *See OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 593, 341 P3d 701 (2014) (noting that "court decisions that existed at the time that the legislature enacted a statute—and that, as a result, it could have been aware of—may be consulted in determining what the legislature intended in enacting the law as part of the context for the legislature's decision," but that "[c]ase law published after enactment—of which the legislature could not have been aware—is another matter").[16]

---

[16] The only pre-1981 federal circuit case cited by the dissent, *United States v. Carranco*, 551 F2d 1197 (10th Cir 1977), is consistent with our conclusion. It involved the admissibility of a freight bill. The bill was created by the shipper as a record of items shipped, and the carrier's truck driver used the bill when reviewing the shipment to confirm that the items on the bill were present and made notations on the bill. Thus, the bill became a record of what had been received, and it was a record based on personal knowledge of the person who reviewed

Second, numerous federal circuit cases decide prior to the enactment of OEC 803(6) support our conclusion. When the Oregon legislature enacted OEC 803(6), federal circuit courts had held that the characteristics set out in the federal statutory business records exception were eligibility requirements.[17] *E.g.*, *Ross v. American Export Isbrandtsen Lines, Inc.*, 453 F2d 1199, 1201 n 2 (2d Cir 1972) ("It of course is fundamental that, in order to claim admissibility of an otherwise hearsay statement *** under the Federal Business Records Act, a foundation must be laid establishing the indispensable requirements of the statute."); *see also United States v. Grossman*, 614 F2d 295, 297 (1st Cir 1980) (upholding admission of record under FRE 803(6) after considering whether each of the rule's enumerated requirements were satisfied based on the testimony of a witness with knowledge of how the record was prepared). They had excluded the admission of evidence under the business records exception where the party seeking to utilize the exception had failed to present evidence of the business practices of the business that made the records. *E.g.*, *N. L. R. B. v. First Termite Control Co., Inc.*, 646 F2d 424, 427 & n 5 (9th Cir 1981) (emphasizing the need for a witness who could testify about how the company that created the

---

the shipment and annotated the bill at that time. Accordingly, the proponent of admission of the bill presented evidence regarding the practices of the carrier. Specifically, the truck driver testified that such bills were regularly used by the carrier "as the means of determining whether or not a shipment they received from another carrier had too many items or too few" and that "notations were made if discrepancies appeared." *Id.* at 1200. The court held that that testimony was sufficient to establish the bill's admissibility, under FRE 803(6), as a hearsay record of the items the carrier had received. *Id.*

[17] The Federal Rules of Evidence were adopted in 1975, but the predecessor statute to the Federal Rules of Evidence included an analogous business records exception:

"[A]ny writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."

28 USC § 1732(a) (repealed 1975).

record had "made and kept" its records, and noting that the legislative history "clearly established" the drafters' intent "that the introducing witness have knowledge of the *making, keeping and maintaining* of the documents" (emphasis added)); *J. Howard Smith, Inc. v. S.S. Maranon*, 501 F2d 1275, 1278 (2d Cir 1974), *cert den*, 420 US 975 (1975) (holding that records created by a third-party firm were not admissible where the proponent's witness was not associated with the firm and "had no personal knowledge of how the firm created or kept the records"); *United States v. Rosenstein*, 474 F2d 705, 710 (2d Cir 1973) (stating that, although a proponent's witness need not have personally kept the records being proffered, the witness must be "sufficiently familiar with the business practice" of the business that made the records and must testify that the "records were made as part of that practice").

Moreover, in *United States v. Davis*, 571 F2d 1354 (5th Cir 1978), the Fifth Circuit had rejected a claim similar to the one that plaintiff and the dissent make here: that a record qualified for the business records exception because, although the proponent had received it from a third party, the proponent regularly requested, retained, and relied on such records.

In *Davis*, a criminal case, the government proffered two forms that an agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF) had sent out to gather information regarding whether a gun that the defendant had received had been shipped or transported in interstate commerce. One form was filled out by another ATF agent based on information that did not originate within the Bureau; the other was completed by an employee of the gun manufacturer, Colt Industries. The government sought to use the completed forms to prove that the gun had been manufactured in one state and sold in another. As the Fifth Circuit later recounted:

> "The [trial] court acknowledged that the information entered on the two ATF forms did not originate within the Bureau. ATF merely preserved the information as reported on the forms. Thus, it was questionable whether the documents were actually a part of the records of the Bureau's

business and admissible under the rule 803(6) exception. *The court was impressed, however, that it was part of ATF's regular business activity to make the sort of inquiries made here and to maintain the results of those inquiries in its investigative files. Also impressive to the court was ATF's reliance upon that information in the conduct of its affairs.*"

*Id*. at 1357 (emphasis added). Based on those considerations, the trial court ruled that the forms were admissible under FRE 803(6).

On appeal, the Fifth Circuit reversed, holding that the forms did not qualify for the business records exception. *Id*. at 1358. The court treated the characteristics set out in FRE 803(6) as "condition[s] essential to admissibility" under the exception. *Id*. at 1359. As the court explained, the foundation that the government had laid for the form received from Colt was deficient because it was

"silent as to how Colt recorded the information concerning the manufacture and distribution of firearms or whether, in the language of rule 803(6), it was the 'regular practice of [Colt] to make [such] record[s]'; whether the records were 'kept in the course of a regularly conducted business activity'; and whether they were 'made at or near the time by, or from information transmitted by, a person with knowledge.'"

*Id*. (quoting FRE 803(6)) (brackets in *Davis*)). Thus, *Davis*—like the other pre-1981 federal circuit cases cited above, *see* 369 Or at 244-45—held, as we do, that a party seeking to utilize the business records exception must present evidence of the record-making practices of the business that created the record.

In addition to cases decided before the enactment of OEC 803(6), plaintiff and the dissent also cite later federal circuit court cases. Those cases could not have affected the Oregon legislature's enactment of OEC 803(6). Their persuasive value depends on, among other things, whether they involve the same type of analysis that we are required to employ, and they do not. The analysis in those cases differs in two important ways from the analysis that our case law requires us to conduct.

First, the federal circuit courts employ a different standard of review than we do. They review trial court rulings regarding hearsay exceptions like FRE 803(6) for abuse of discretion. *See, e.g.*, *Air Land Forwarders, Inc. v. U.S.*, 172 F3d 1338, 1341 (Fed Cir 1999) (reviewing a district court's admission of evidence under FRE 803(6) for abuse of discretion); *United States v. Dreer*, 740 F2d 18, 19 (11th Cir 1984) (same). But we review them for errors of law. *State v. Cook*, 340 Or 530, 537, 135 P3d 260 (2006) (citing *State v. Cunningham*, 337 Or 528, 538-39, 99 P3d 271 (2004)). It appears that, because of the standard of review that the federal circuit courts use, the courts in the cases cited by plaintiff and the dissent regard the admissibility of hearsay as a discretionary issue and, therefore, do not regard the characteristics set out in FRE 803(6) as eligibility requirements.[18]

Second, and relatedly, the federal circuit cases cited by plaintiff and the dissent do not engage with the text of FRE 803(6).[19] We do not approach statutory interpretation

---

[18] Even if this court applied the abuse-of-discretion standard to admissibility determinations under OEC 803(6), it would still reach the issue of whether the trial court had committed legal error in construing the scope of its discretion under that rule. *See Oakmont, LLC v. Dept. of Rev.*, 359 Or 779, 789, 377 P3d 523 (2016) (noting that, "[i]n reviewing a ruling for abuse of discretion, it can be important to distinguish the factual and legal issues that underlie * * * a trial court's exercise of discretion," and that, "when a trial court's exercise of discretion rests on an incorrect legal premise, an appellate court will review that legal premise independently" (citing *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000)); *accord State v. Hightower*, 361 Or 412, 421, 393 P3d 224 (2017) (recognizing that "legal determinations that are predicates for the exercise of discretion are reviewed for errors of law").

Federal courts reviewing rulings for abuse of discretion have articulated a similar requirement. *See, e.g.*, *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F3d 1087, 1091 (9th Cir 2010) ("[N]o federal court has ever held that a district court's error as to a matter of law is not an abuse of discretion * * *."); *Bradley v. Sugarbaker*, 891 F3d 29, 33 (1st Cir 2018) ("We review the district court's interpretation of the Federal Rules of Evidence *de novo*, but its application of those Rules for abuse of discretion."). Despite that articulated standard, however, some federal courts have applied a less rigorous textual analysis and reached a different result when reviewing a trial court's admission of evidence under the analogous federal business records exception. *See, e.g.*, *Air Land Forwarders, Inc.*, 172 F3d at 1341 (recognizing that a trial court abuses its discretion if its decision is "based on an erroneous construction of the law," but upholding admission of evidence under FRE 803(6) without considering whether the proponent had satisfied the exception's enumerated requirements).

[19] *E.g.*, *U.S. Bank Trust v. Jones*, 925 F3d 534 (1st Cir 2019); *Air Land Forwarders, Inc.*, 172 F3d 1338; *MRT Construction v. Hardrives, Inc.*, 158 F3d 478 (9th Cir 1998); *U.S. v. Jakobetz*, 955 F2d 786 (2d Cir 1992); *United States v.*

like the federal courts did in the cases cited by plaintiff and the dissent. Instead, we focus on the text of the statute, in context, which is "the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993); *accord Gaines*, 346 Or at 171 (recognizing that "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes" (internal quotation marks omitted)).

Because the federal cases cited by plaintiff and the dissent do not engage in the analysis we are required to employ, they are not persuasive. In those cases, the courts created their own tests for the business records exception. Notably, different courts have created different tests.[20] The

*Parker*, 749 F2d 628 (11th Cir 1984). Indeed, in *Air Land Forwarders, Inc.*, the dissent pointed out that the majority's theory of admissibility, which did not require a qualified witness who could be subjected to meaningful cross-examination as to the manner in which the records were made and kept, was "squarely at odds with the text of [FRE] 803(6)" and in conflict with the court's recent case law. 172 F3d at 1346, 1348 (Bryson, J., dissenting) (citing *Kolmes v. World Fibers Corp.*, 107 F3d 1534, 1542 (Fed Cir 1997)).

[20] Where federal decisions, including those cited by plaintiff and the dissent, have not grounded their analyses in the text of the analogous federal rule, courts have ended up creating different tests. Some courts have held that a record created by one business qualifies for the business records exception if the record was integrated into the records of another business and relied on by that business in its daily operations. *E.g.*, *Jakobetz*, 955 F2d at 801 (permitting admission of third-party records under FRE 803(6) where "witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations" (internal quotation marks omitted)). Others have required additional, general indicia of reliability. *E.g.*, *Air Land Forwarders, Inc.*, 172 F3d at 1343 (requiring reliance, incorporation of the record, and "other circumstances indicating the trustworthiness of the [record]"). And still others have enumerated more specific requirements, including that the acquiring business that has integrated and relied on the record also has a substantial interest in its accuracy. *E.g.*, *MRT Construction*, 158 F3d at 483 (permitting admission of third-party records received by a business "when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records"). Others seem to take a particularly flexible approach. *E.g.*, *U.S. Bank Trust*, 925 F3d at 537-38 (noting that the First Circuit has upheld admission of third-party records where the records have been "intimately integrated" into the records of the acquiring business *or* where the acquiring business has relied on the records, and noting that the "key question" is simply "whether the records in question are reliable enough to be admissible" (internal quotation marks omitted)). *See also Bank of New York Mellon v. Shone*, 2020 ME 122, ¶ 1, 239 A3d 671, 674 (2020) (holding admissible "integrated" third-party records under Maine's business record exception, which is "identical" to the federal exception, when "the proponent of the evidence establishes that the

different tests reflect different policy choices, which high-
lights that, if we were to do what plaintiff and the dissent
urge, we would be making our own policy choices. But, again,
that is not our role. If the legislature wanted to adopt a pol-
icy of excepting records from the hearsay rule if they were
created by one business and transferred to another business
that relied on them, the legislature could have done so, but it
did not.[21]

---

receiving business has integrated the record into its own records, has verified or
otherwise established the accuracy of the contents of the record, and has relied
on the record in the conduct of its operations").

[21] In addition to the federal circuit court cases, plaintiff cites state court
cases. In response, we note that many states have construed their statutory busi-
ness records exceptions the same way that we construe OEC 803(6). *See, e.g.*,
*CACH, LLC v. Askew*, 358 SW3d 58, 65 (Mo 2012) (holding that records origi-
nally created by banks were inadmissible through the testimony of the plaintiff's
records custodian, who lacked personal knowledge of the banks' record-keeping
practices); *Commonwealth Financial Systems v. Smith*, 15 A3d 492, 499-500
(Pa Super Ct 2011) (holding that the employee of a debt purchaser could not
lay a foundation for account statements acquired from a third party where the
employee lacked personal knowledge of the "preparation and maintenance" of
the account statements, and noting that "the Pennsylvania Supreme Court has
not seen fit to adopt the rule of incorporation"); *Palisades Collection LLC v. Kalal*,
324 Wis 2d 180, 192-94, 781 NW2d 503, 509-10 (2010) (holding that a represen-
tative from an entity that was collecting a debt lacked personal knowledge of the
record-keeping process of Chase Bank and was therefore not a "qualified witness"
under Wisconsin's business records exception). Many cases plaintiff cites simply
hold, consistent with our decision in this case, that a "qualified witness" need
not have personally assembled the record, or need not be from the business that
created the record, *provided that the witness establishes that the other founda-
tional requirements of the exception are met. E.g.*, *State v. Parker*, 231 Ariz 391,
401-02, 296 P3d 54, 64-65 (2013) (noting that a sponsoring witness with knowl-
edge of how documents were made and kept was not required to have personally
assembled the proffered record); *State v. Fitzwater*, 122 Haw 354, 367-68, 227 P3d
520, 533-34 (2010) (holding that third-party records "are admissible as business
records of the incorporating entity provided that it relies on the records, there are
other indicia of reliability, *and the requirements of [the Hawaii business records
exception] are otherwise satisfied*" (emphasis added)); *Alloway v. RT Capital, Inc.*,
2008 WY 123, ¶¶ 15-17, 193 P3d 713, 718 (2008) (similar); *Great Seneca Financial
v. Felty*, 170 Ohio App 3d 737, 742, 869 NE2d 30, 33-34 (2006) (permitting admis-
sion of third-party records where a witness from the proponent's business estab-
lished that the "essential elements" of the Ohio business records exception were
met).

Other state court cases that plaintiff cites do not persuasively analyze the
wording of the state's business records exception, *e.g.*, *Dodeka, L.L.C. v. Campos*,
377 SW3d 726, 732 (Tex App 2012), or involve business records exceptions that
are worded very differently than OEC 803(6), *e.g.*, *Beal Bank, SSB v. Eurich*, 444
Mass 813, 815, 831 NE2d 909, 911 (2005) (applying the Massachusetts business
records exception, which does not require testimony from a custodian or other
qualified witness, or that the proffered record was made by, or from information
transmitted by, a person with knowledge).

5.  *Plaintiff's argument about the standard of review is incorrect.*

Before addressing whether plaintiff's foundation for the documents it received from Discover satisfied the requirements of OEC 803(6), we pause to address plaintiff's contention that we should review the trial court's ruling regarding admissibility of the documents for abuse of discretion. That contention is inconsistent with this court's case law.

Plaintiff bases its assertion on *Mayor v. Dowsett*, 240 Or 196, 229, 400 P2d 234 (1965), which involved an earlier version of the business records exception and has been superseded by *Cunningham*. In *Cunningham*, this court explained that, when an evidentiary ruling can have only one legally correct answer, such as a ruling regarding whether requirements for a hearsay exception have been met, the ruling is reviewed for errors of law. 337 Or at 536-39. *Cunningham* involved the admissibility of hearsay statements under the excited utterance exception, OEC 803(2). Like the business records exception, the excited utterance exception has multiple requirements,[22] and, as this court explained in *Cunningham*, whether those requirements have been satisfied is ultimately a question of law:

"[T]here is only one legally correct answer to the question whether a statement is admissible as an excited utterance. The trial court finds the facts that underlie the application of OEC 803(2), and those findings will not be disturbed if evidence in the record supports them. However, the ultimate legal issue—whether the requirements of OEC 803(2) have been met and the hearsay statement is therefore admissible as an excited utterance—is a question of law as to which there is only one legally correct outcome. Like this court's holding in [*State v.*] *Titus*[, 328 Or 475, 982 P2d 1133 (1999),] that evidence is either relevant or it is not, we conclude that a statement is either an excited utterance under OEC 803(2) or it is not. It follows that an appellate

_____

[22] For a statement to qualify for the excited utterance exception, "(1) a startling event or condition must have occurred; (2) the statement must have been made while the declarant was under the stress of the excitement caused by the event or condition; and (3) the statement must relate to the startling event or condition." *Cunningham*, 337 Or at 535.

court reviews the trial court's legal conclusion that a statement is or is not an excited utterance to determine whether that ruling was an error of law."

*Id.* at 538; *see also Cook*, 340 Or at 537 (holding that a trial court's ruling regarding whether a hearsay statement qualifies for an exception to the hearsay rule is reviewed for errors of law). As with the excited utterance exception, a record is either a business record under OEC 803(6) or it is not. If two trial courts found the same facts, they could not reach different legal conclusions about whether the statement would be admissible under the business records exception.[23]

In this case, it is particularly clear that we must review the trial court's legal ruling for errors of law because the ruling relates to what the statutory requirements for the business records exception are. Here, the trial court ruled that plaintiff was not required to present evidence regarding the record-making practices of the business that created the records at issue. That is, the trial court ruled that plaintiff was not required to prove, among other things, that the records were based on personal knowledge, made at or near the time of the acts they described, or pursuant to a regular practice. That ruling is akin to a ruling that a party seeking to utilize the excited utterance exception is not required to prove that there was a startling event. It involves a question of statutory construction, which is a question of law.

C.  *Application*

In this case, plaintiff did not present evidence about the record-keeping practices of Citibank or Discover sufficient to establish that the records have the characteristics required by OEC 803(6). For example, plaintiff did not present evidence about who generated the summaries of the loan histories, nor any evidence about when, by whom, why, and how the information in the summaries was reported and recorded; it did not establish that the information was reported and recorded close in time to the activities to which

---

[23] As noted above, a record that has the five enumerated characteristics set forth in OEC 803(6) will qualify for the exception "unless the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness." The standard of review that would apply to that determination of trustworthiness is not at issue in this case.

it relates, or that the information was made and kept pursuant to a regular practice.

Because plaintiff failed to lay the foundation required by OEC 803(6) for the documents it received from Discover, the trial court erred in ruling that those documents qualified for the business records exception. And, because plaintiff's motion for summary judgment relied on those documents, the trial court erred in granting plaintiff's motion.

That leads to the question of whether, as defendant argues, the trial court erred in denying his motion for summary judgment. Defendant contends that, because plaintiff failed to lay the foundation required by OEC 803(6) for the documents plaintiff received from Discover, it offered no admissible evidence supporting its claim. According to defendant, the trial court therefore should have denied plaintiff's motion for summary judgment and granted defendant's motion.

Defendant's contention, however, sweeps too broadly. Although plaintiff failed to lay a proper foundation to qualify the documents plaintiff received from Discover for admission under the business records exception, both McGough's affidavit and plaintiff's arguments to the trial court asserted alternative grounds for admitting at least some of the documents even if the business records exception did not apply. According to McGough's affidavit, the accompanying documents were "*either* produced and maintained directly by Plaintiff *or* [were] documents from [Discover's] proof of claim which [were] adopted by the Plaintiff and relied upon in the ordinary course of Plaintiff's business." (Emphases added.) And, at the hearing on the parties' cross-motions for summary judgment, plaintiff argued that the loan applications were admissible as party admissions, and the list of checks that plaintiff paid to Discover were admissible as records of plaintiff.

Because the trial court concluded that all the documents attached to McGough's affidavit were "admissible as business records," the trial court did not rule on any alternative grounds for admitting the documents. Therefore, we remand this case to the trial court to determine whether

any of the documents are admissible and then reconsider the parties' motions for summary judgment.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**GARRETT, J.,** dissenting.

I agree with much of what the majority says about the origins, purpose, and operation of OEC 803(6). That hearsay exception allows the admission of business records when certain criteria are met; to the extent that the analyses put forward by plaintiff and the Court of Appeals would allow the admission of documents that do not meet those criteria, the majority correctly rejects them.

However, I do not agree that the trial court committed legal error by admitting the business records in this case. The majority treats those records as belonging to a "third party"—a mistaken characterization that leads the majority to conclude that the records are inadmissible because plaintiff failed to "present evidence of the third party's record-making practices." 369 Or at 216. But plaintiff presented the documents as its *own* records, and they satisfy the requirements in OEC 803(6):

> "[1] A memorandum, report, record, or data compilation, in any form, [2] of acts, events, conditions, opinions, or diagnoses, [3] made at or near the time [4] by, or from information transmitted by, a person with knowledge, [5] if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness."

Plaintiff's records qualified under the rule because: (1) the documents constitute a "record, or data compilation, in any form"; (2) they evidence an "act" or "event," namely the creation of a liability owed by defendant, first to a third party not involved in this action and now, as a result of transactions not challenged here, to plaintiff; (3) the record was

"made at or near the time" the liability came into existence (*i.e.*, when plaintiff paid the insurance claim to Citibank and thus became entitled to bring this action against defendant); (4) plaintiff submitted evidence, in the form of the McGough affidavit, that the record was made by "a person with knowledge"; and (5) McGough further averred that she was plaintiff's "qualified custodian of records" and able to "affirm" that the documents were incorporated, maintained, adopted, and relied upon as a part of plaintiff's regular business practices. Nothing else was required.

In concluding otherwise, the majority characterizes the records at issue as a combination of Citibank's records and Discover's records that require information about those entities' record-making practices. 369 Or at 252. The majority's analysis fails to appreciate that a document originally created by Company A might later, in the ordinary course of routine business transactions, become part of a distinct record created and maintained by Company B; at that point, the same information may simultaneously be a "record" of both businesses.

Nothing in the text of OEC 803(6) requires a court to ignore that reality—and most courts around the country, interpreting substantively identical rules, do not ignore it. Neither should we. The text can be understood to encompass information that originated from another entity when that information has been fully integrated into the proponent's own records that have the characteristics required by the rule. Suppose a business keeps a file that includes hundreds of single-page documents from various sources, to which entries are added and subtracted over time in the regular course of business. The majority's analysis presumes that, if the business wants to offer that file into evidence, then a separate OEC 803(6) analysis must occur for each page that originated elsewhere. But, as a matter of text and common sense, the "record" can consist of the file as a whole—a reading that is consistent with the rule's statement that the record can be "in any form" and its reference to a "data compilation" as a type of record.

In the digital age, when data can be effortlessly transferred from one electronic document into another, a

single business record could comprise thousands of pages, containing data received from other sources in a variety of forms—each bit of data perhaps its own record belonging to another entity before being received and integrated into a new record belonging to the proponent business. If the proponent business demonstrates that the information is now its own record, nothing in the rule requires the trial court to treat the information as belonging to a "third party." The only evidentiary foundation required concerns the record-keeping practices of the proponent business.

The majority takes a different view, arguing that what constitutes the "record" is determined by "the statement that the proponent is offering for the truth of the matter asserted." 369 Or at 235. Thus, for example, if plaintiff was attempting to use a document originating from Discover to show that Discover made a loan to defendant, then the document from Discover is the "record." But that explanation begs the question. The "matter" being asserted does not have to be understood as the loan from Discover to defendant many years ago; it can also be understood as the creation of a liability owed to plaintiff many years later. *That* is the "act" or "event" for purposes of OEC 803(6) that plaintiff is seeking to prove, and the various pieces of the paper trail demonstrating that liability can be understood as component parts of a larger "record" or "data compilation" that plaintiff created in the ordinary course of its business "at or near the time" that that liability came about.

Given the practically limitless ways in which business records might be maintained, formatted, organized, and presented to a trial court, the majority's approach could significantly complicate the admission of business records by presumptively excluding any part of a record that was originally created by a third party, no matter how thoroughly it has been integrated into the proponent's own records. In this case, it may not have been difficult for plaintiff to obtain the third-party information that the majority announces was necessary. In other cases, however, obtaining that information may be difficult, expensive, or impossible. A "third party" may have ceased existing years earlier; individuals with personal knowledge of its record-keeping processes

may be unavailable. Courts have always interpreted the business records exception broadly, with an eye toward the practical realities of modern commerce.[1] The majority's narrow approach is ill-suited for those realities, a problem that will likely worsen as technology advances in ways this court cannot foresee. And that approach will result in additional costs in business and consumer transactions, costs that will of course be passed on to consumers.

It is thus unsurprising that the prevailing approach around the country is different than the majority's. The federal rule is substantively identical to OEC 803(6), and nearly all federal courts allow admission of integrated records without requiring the proponent to present information about a "third party's" business practices. Federal courts have continued to interpret that rule's requirements broadly, including in the context of integrated records.[2] The First Circuit,

---

[1] Judge Learned Hand explained the rationale of an early version of the business records exception:

"The routine of modern affairs, mercantile, financial[,] and industrial, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents. Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt, if only his creditor does a large enough business. That there should not be checks and assurances of veracity we do not suggest; it is indeed possible to expose adversaries to genuine danger, but to continue a system of rules, originally designed to relieve small shopkeepers from their incompetence as witnesses, into present day transactions is to cook the egg by burning down the house."

*Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co.*, 18 F2d 934, 937 (2d Cir 1927).

[2] The majority cites Mueller and Kirkpatrick's *Federal Evidence* in support of a stricter approach. 369 Or at 234 n 11. However, Mueller and Kirkpatrick in fact explain that the federal courts have interpreted integrated records to fall within the exception when an organization relies on them in its normal course of business. Because many people are involved in transmitting data, often by entries in records rather than word of mouth, business records demonstrate reliability when "the [external] source and recorder act in regular course, and everyone in the chain of transmission does likewise." Christopher B. Mueller & Laird C. Kirkpatrick, 4 *Federal Evidence* § 8:82, 758 (4th ed 2013). "[T]he message of Rule 803(6) is that the fact of layered hearsay does not matter." *Id*.

Mueller and Kirkpatrick go on to emphasize that, when presented with integrated records, federal courts generally do *not* require a witness from each organization to authenticate the records:

for example, allows the admission of "intimately integrated" business records if the evidence "demonstrate[s] the reliability and trustworthiness of the information." *U.S. Bank Trust v. Jones*, 925 F3d 534, 537, 539 (1st Cir 2019) (brackets in original).[3] Viewing the rule's requirements broadly, the First Circuit has "affirmed the admission of business records containing third-party entries \* \* \* where the entries were 'intimately integrated' into the business records." *Id.* at 537 (citing *FTC v. Direct Marketing Concepts, Inc.*, 624 F3d 1, 16 n 15 (1st Cir 2010)). It has also admitted records when "the party that produced the business records 'relied on the third-party document and documents such as those in his business.'" *Id.* (quoting *U.S. v. Doe*, 960 F2d 221, 223 (1st Cir 1992) (brackets omitted)). Conversely, that court has excluded integrated records when the business that produced the records "lacked a self-interest in assuring the accuracy of the third-party information." *Id.* at 538 (citing *U.S. v. Vigneau*, 187 F3d 70, 77 & n 6 (1st Cir 1999)).

Other jurisdictions have taken a similarly broad approach. The Ninth Circuit allows a proponent to introduce business records that include records that originated elsewhere when the records were received directly, maintained in the proponent's files, and relied upon, and when the proponent business "had a substantial interest in the accuracy of the [records]." *MRT Construction v. Hardrives, Inc.*, 158 F3d 478, 483 (9th Cir 1998). The Second and Tenth Circuits also follow this trend, allowing integrated business records to be admitted: "Even if the document is originally created

---

"Some courts make do with a single knowledgeable witness, and the decisions leave the impression that courts are satisfied by the fact that the second business sees fit to use the information or records of the first business as a kind of independent guarantor that the incorporated data or records are trustworthy, and not as real evidence that they satisfy the exception independently."

*Id.* at 761.

[3] That court's reasoning was based on similar legislative history to the Oregon Evidence Code: "[W]e are mindful that the reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation. FRE 803 advisory committee's note to 1972 proposed rules. The rule seeks to capture these factors and to extend their impact by applying them to a regularly conducted activity. *Id.*" *U.S. Bank Trust*, 925 F3d at 538 (internal quotation marks omitted).

by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity." *U.S. v. Jakobetz*, 955 F2d 786, 801 (2d Cir 1992) (citing *United States v. Carranco*, 551 F2d 1197, 1200 (10th Cir 1977)); *see also Air Land Forwarders, Inc. v. U.S.*, 172 F3d 1338, 1343 (Fed Cir 1999) (admitting integrated business records without requiring testimony about the original creator's record-keeping practices when the proponent relied on the accuracy of the record and other circumstances indicated that the document was trustworthy); *United States v. Parker*, 749 F2d 628, 633 (11th Cir 1984) (concluding that the business records exception was still available to a business who "had neither prepared the [record] nor had first-hand knowledge of [its] preparation"). In addition to those federal courts, many other state courts allow admission of integrated records under similar or identical rules.[4]

The majority contends that all of those cases are distinguishable because they either have not grappled with the text of the rule or (in the case of the federal courts) apply an abuse-of-discretion standard of review. 369 Or at 247. I would not infer that the many courts interpreting the rule differently have ignored its text. Rather, their decisions reflect a recognition that "record" has a broader meaning than what the majority adopts, and that documents originating from somewhere else may nonetheless come to be the business records of the proponent.

The majority also argues that an integrated-records approach is contrary to the purpose of the rule because it would not provide the assurances of accuracy that OEC 803(6) contemplates. The majority emphasizes the requirement that a record be made "at or near the time by, or from information transmitted by, a person with knowledge" of the event. 369 Or at 236. I understand the concern to be that, if a record is transferred from Company A to Company B,

---

[4] While not every state has addressed the question, of those that have, at least 24 have articulated a test similar to the federal one. While not all of those courts have a textually identical rule, over half of them do have rules that are substantively identical—that is, the rule includes a temporal personal knowledge requirement, a regularly conducted activity requirement, and a regular practice requirement. *E.g.*, Ohio Evid R 803(6); Ariz R Evid 803(6). The Court of Appeals' opinion further describes how those states have approached integrated records. *Arrowood Indemnity Co. v. Fasching*, 304 Or App 749, 760 n 4, 469 P3d 271 (2020).

then Company B should be required to submit the same information about Company A's record-making practices that Company A would be required to provide if it were the proponent. However, if Company B is offering what is now *its own* record, then, textually, the proper focus is on the circumstances of creating and maintaining B's record, not A's. Company B would need to demonstrate that its process for creating and maintaining the record satisfies the requirements of the rule. The records custodian from Company B can present that information, including the circumstances under which the information was received from Company A.

The majority may be correct that, in that situation, less will be known about how A generated some underlying information than if A itself were the proponent. But that is a matter going to the weight of the evidence that is properly dealt with on cross-examination, not a basis for deeming *B's record* inadmissible. *See N. L. R. B. v. First Termite Control Co., Inc.*, 646 F2d 424, 427 (9th Cir 1981) (emphasizing that the qualified witness must be subject to meaningful cross-examination for the factfinder to evaluate the accuracy of the record). In addition, the trial court retains the authority to exclude records that otherwise meet the criteria for the exception if "the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness." OEC 803(6). Here, defendant did not argue to the trial court that there is a particular reason to doubt the trustworthiness of plaintiff's documents, nor does he make that argument now.[5]

---

[5] *Amicus curiae* Oregon Trial Lawyers Association outlines what it describes as "the realities of modern debt collection," focusing on the "predatory conduct and exploitation of consumers [that] persists throughout the unsecured debt-collection industry." It is certainly true that the country has seen predatory and abusive conduct in consumer and mortgage lending and in collection efforts related to that debt. Legislatures, including Oregon's, also have increased statutory protections against "debt buyers," *see* Or Laws 2017, ch 625, § 2 (amending ORS 646.639 to impose requirements before a "debt buyer" can bring an action against a debtor), and courts have adopted new rules to ensure fairness in service and later proceedings in consumer debt cases, *see* UTCR 5.180 (setting out prefiling notification and document requirements for consumer debt collection actions). But those well-documented abuses are not a basis for reading OEC 803(6) to impose an artificial categorical bar on records that originate from third parties. Rather, in a given case, it might be appropriate to consider industry or company practices as part of the inquiry into whether records that meet the

In short, the trial court did not err in admitting plaintiff's records. Because the majority concludes otherwise, I respectfully dissent.

Balmer, J., joins in this dissenting opinion.

---

threshold criteria for admissibility should *nonetheless* be excluded because "the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness." OEC 803(6). Again, nothing in this record permits such a conclusion. And defendant makes no claim that either the unpaid law school debt plaintiff seeks to collect or plaintiff's conduct in this litigation constitutes "predatory conduct" or "exploitation."